IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

LISA MITCHELL,

                Plaintiff,                    OPINION AND ORDER

  v.                                                      23-cv-605-wmc

GRAND HOTEL, INC., doing business as
Rodeway Inn and Suites, CHOICE HOTELS
INTERNATIONAL, INC., and JOHN DOES 1-5,

                Defendants.

Plaintiff Lisa Mitchell brings this civil lawsuit under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1589 *et seq*., as well as Title II of the Civil Rights Act of 1964 and state law, claiming that defendants knowingly participated in a criminal venture that subjected her to human trafficking, sexual assault, battery, and severe mental and physical abuse.  More specifically, Mitchell alleges that a male owner of Rodeway Inn and Suites took advantage of her inability to afford other housing by harassing her, watching her on video surveillance footage, following her to her room, forcibly touching her without consent, and threatening to kick her out of the hotel if she rejected sexual contact.  Defendant Choice Hotels International, Inc., has since moved to dismiss Mitchell's TVPRA and intentional infliction of emotional distress claims against it on the grounds that it cannot be held liable based solely on a franchise relationship with Rodeway Inn.  (Dkt. #13.)  The court will deny this motion for the reasons below.

BACKGROUND[1]

Plaintiff Lisa Mitchell is a transgender female who lives in Madison, Wisconsin, and volunteers for the "Black and Pink" organization, which fights for the rights of the LGBTQIA+ community. Black and Pink has arrangements with motels in Madison, including Rodeway Inn and Suites, to house its volunteer members. In particular, Black and Pink arranged for Mitchell to stay at Rodeway from July 28 to September 8, 2021.

From the time that Mitchell checked into Rodeway, she was allegedly subjected to sexual harassment, assault, and exploitation by the male owner, who would watch Mitchell on video surveillance and call Mitchell when she arrived back at her room. For example, on multiple occasions, the owner allegedly showed up at Mitchell's door insisting that her room needed to be cleaned, forcibly entered the room, and pretended to clean, but instead sexually touched Mitchell's body. When Mitchell resisted the owner's advances, he further threatened to have her removed from the motel if she did not comply. Having no other place to live with her pets, Mitchell felt that she had to acquiesce to the owner's advances to remain in her room.

When the owner again forced himself into her room on August 31, 2021, Mitchell secretly recorded his sexual assault on her phone. However, the owner realized that he was being recorded, knocked the phone over, and left the room in anger. He also allegedly

---

[1] In resolving a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint not only as true but viewed in a light most favorable to plaintiff, including drawing all reasonable inferences in plaintiff's favor. *Killingsworth v. HSBC Bank Nev.*, 507 F.3d 614, 618 (7th Cir. 2007).

demanded that Mitchell leave Rodeway immediately. Upon leaving, Mitchell complained of the assault to Choice Hotels and requested a full refund.[2]

Moreover, Mitchell was not the only individual who was assaulted by the owner, since a 17-year-old woman allegedly confided to Mitchell in August 2021 that she, too, was (1) assaulted by the owner, and (2) removed from Rodeway soon after talking with Mitchell. While Mitchell further believes that Choice Hotels has received other complaints regarding the Rodeway owner's pattern of assaulting guests, Choice Hotels has never initiated an investigation or taken any action against Rodeway, subjecting Mitchell and others to repeat assaults by the owner.

As a result of these assaults, Mitchell allegedly suffers from post traumatic stress disorder ("PTSD"), receives psychiatric treatment, has been homeless at times, and has been shuffled to multiple motels, where she continues to live in fear. Additionally, when Mitchell obtained alternative housing at Extended Stay America in Madison,[3] she received a call from the hotel's manager on October 13, 2021, who informed her that she had to leave immediately due to an "issue" at another motel, which Mitchell understood to be referring to the complaint she brought against Choice Hotels regarding Rodeway.

---

[2] Mitchell does not allege to whom she spoke or whether she received any compensation.

[3] Michell also alleges in her complaint a belief that Extended Stay America is a subsidiary of Choice Hotels and owned by the same family that owns Rodeway Inn. While Choice Hotels attempts to refute this contention with publicly available franchise documents available online (dkt. #14-1 (citing https://wdfi.org)) that reveal no such relationship, the court finds it unnecessary resolve this dispute at the pleading stage.

OPINION

I. **TVPRA Claims**

The TVPRA creates civil liability for individuals who commit trafficking-related offenses. In particular, a 2008 amendment to the TVPRA allows victims of sex and labor trafficking to bring claims against "whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a); *see also G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 548 (7th Cir. 2023) (discussing civil remedy for participant liability).

Here, Michell alleges that she was a victim of: (1) commercial sex trafficking by force, fraud, or coercion, § 1591(a); (2) forced labor or services by threats of serious physical, psychological, financial, or reputational harm, § 1589; and (3) a conspiracy to engage in sex and labor trafficking, § 1594. However, to hold Choice Hotels liable under a theory of participant or beneficiary liability for any of these alleged violations, Mitchell must plausibly allege and ultimately prove that: (1) a venture engaged in a violation of the TVPRA; (2) Choice Hotels knew or should have known that the venture had violated the TVPRA; (3) Choice Hotels participated in that venture; and (4) Choice Hotels knowingly benefited from its participation. *G.G.*, 76 4th at 553.[4] Choice Hotels argues that Mitchell

---

[4] Section 1594 of the TVRA also imposes criminal sanctions for "conspiring with another" to violate the trafficking prohibitions of the Act, which requires an agreement consisting of a meeting of the minds. Because Choice Hotels argues that Mitchell fails to sufficiently allege Choice Hotels's participation in a conspiracy fails for the same reasons as she fails to allege Choice Hotels's participation in violations of §§ 1589 and 1591 -- and because the parties also seem to assume that the requirements for pleading a conspiracy largely overlap with those for participant liability -- the court will not discuss the conspiracy

4

has failed to satisfy this standard because the only "venture" at issue -- the franchise agreement with Rodeway Inn -- had *no* plausible connection with Mitchell's assault, of which Choice Hotels had no knowledge until after Mitchell had left Rodeway Inn. However, reading Mitchell's complaint in a light most favorable to her, the court is persuaded that Mitchell has plausibly alleged all four elements of participant liability as discussed separately below.

### A. Venture

The first question is whether Mitchell has alleged the existence of a venture. While § 1595 does not define the term "venture," § 1591(e)(6) defines the term as "any group of two or more individuals associated in fact, whether or not a legal entity." As Choice Hotels acknowledges, the Seventh Circuit has held that a "venture" under § 1595 need not be intended specifically for sex or labor trafficking, but can merely be a commercial venture like running or expanding a business. *G.G.*, 76 4th at 554 (citing *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 727 (11th Cir. 2021) ("Because Congress did not define a "venture" under Section 1591 as necessarily or primarily involving criminal conduct, we will not impose such a requirement under Section 1595."). Here, Mitchell has plausibly alleged a joint business venture between Rodeway Inn and Choice Hotels in the form of a contractual franchise relationship with each other. *See id.* (finding a "venture" where a

---

allegations separately. In any event, Choice Hotels will have the opportunity to challenge Mitchell's conspiracy allegations and present contrary evidence at summary judgment or trial in support of their argument that there was no agreement to violate §§ 1589 or 1591.

customer relationship management software provider that facilitated and supported growth, expansion, and profitability of classified advertising for a website's business).

B. **Knowledge**

The second question is whether Mitchell has plausibly alleged that Choice Hotels knew or should have known the owner of Rodeway Inn had engaged in violations of § 1589 (forced labor) or § 1591 (sex trafficking).[5] *See G.G.*, 76 4th at 555 n.9 ("This is a negligence standard, and all courts agree that a defendant under Section 1595 must have had at least constructive knowledge that the 'venture' in question has engaged in an act in violation of [the TVPRA] in order for participant liability to attach."). Regarding this element, Mitchell alleges Choice Hotels received complaints that the owner of Rodeway was exploiting guests by forcing them to commit sexual acts to keep their housing, both before and after Mitchell's stay at Rodeway, but did nothing to stop him. While Choice Hotels contends that it did not learn about Mitchell's own complaint until after it happened, this is a matter for discovery, motion practice on the merits, or trial. Similarly, while Choice Hotels criticizes her allegations about other complaints as merely conclusory, Mitchell has plausibly alleged Choice Hotels at least *should have* known that Rodeway's owner was repeatedly engaged in forced labor and sex trafficking during the franchise relationship.

---

[5] While Choice Hotels states that Mitchell does not plausibly allege the owner of Rodeway engaged in conduct meeting the definition of criminal trafficking (dkt. #14 at 8 and 10), it has not developed this argument in any meaningful way, instead focusing on its lack of knowledge and participation, so the court will not analyze whether Mitchell was actually subjected to the type of trafficking prohibited by the statute, though it seems a reasonable inference if generously construing her allegations that she was forced to endure repeated sexual assault while staying at the Rodeway Inn.

Finally, the fact that Mitchell bases her allegations about others' complaints on information and belief does not foreclose her pleading these facts, especially given that most of the evidence relevant to this issue is within the possession of defendants. *G.G.*, 76 F.4th at 555 (Federal Rule of Civil Procedure 9(b) allows plaintiffs to plead knowledge 'generally'."); *J.G. v. Northbrook Indus., Inc.*, 619 F. Supp. 3d 1228, 1237 (N.D. Ga. 2022) (internal citation omitted) ("Twombly's 'plausibility' standard d[oes] not prevent a plaintiff from pleading facts based upon information and belief, 'where the facts are peculiarly within the possession and control of the defendant.'").

Choice Hotels also contends any alleged generalized knowledge it may have had regarding the possible occurrence of trafficking at its franchise hotels, including the Rodeway Inn, is insufficient to satisfy the TVPRA's *mens rea* requirement. *E.g., H.G. v. Inter-Cont'l Hotels Corp.*, 489 F. Supp. 3d 697, 706 (E.D. Mich. 2020) (allegations that defendants were generally aware of sex trafficking in hotel industry and at some of their brand properties fall short of establishing knowledge and participation); *S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 154 (E.D.N.Y. 2020) ("[T]o conclude that franchisors like . . . Choice Hotels are liable under the TVPRA simply because they were generally aware that sex trafficking sometimes occurred on their franchisees' properties unjustifiably bridges the scienter gap between 'should have known' and 'might have been able to guess'."). However, Mitchell alleges far more than Choice Hotels "abstract awareness of sex trafficking in general." *S.J.*, 473 F. Supp. 3d at 154. She alleges that Choice Hotels was *told on more than one occasion* that the owner of one of its franchises was engaging in a *specific* pattern of trafficking by which he exploited vulnerable guests. As such, Mitchell has

7

appropriately and plausibly alleged Choice Hotels' "constructive knowledge of a non-generalized and non-sporadic -- a 'particular' -- venture" that violated the TVPRA. *G.G.*, 76 F.4th at 557 (clarifying holding in *S.J.* and refusing to take "additional inferential leap to conclude that Section 1595 requires knowledge of a particular victim of that particular venture"). Whether the evidence in this case bears out that allegation is also something that must be addressed at a later stage of these proceedings.

### C. Participation

The third question is whether Mitchell sufficiently alleges Choice Hotels' participation in the venture with Rodeway by "assisting, supporting, or facilitating" the violation of the TVPRA. *G.G.*, 76 F.4th at 558 (adopting interpretation in *Red Roof Inns*, 21 F.4th at 724, that participation under § 1595 is not the same as § 1591's requirement of "knowingly assisting, supporting, or facilitating a violation" of the TVPRA). Despite Choice Hotels' suggestion to the contrary, the Seventh Circuit has held this element does not require direct participation in or knowledge of the criminal violations. *Id*. at 559; *cf*., *K.O. v. G6 Hosp., LLC*, No. 22-11450, 2024 WL 1396269, at *7 (E.D. Mich. Mar. 31, 2024) ("Whether two parties have a 'direct association' is often determined by looking to the explicit actions of staff members who directly aid traffickers, for example, by 'acting as lookouts for Plaintiff's traffickers.'").

Rather, what must be shown is an "ordinary understanding of culpable assistance to a wrongdoer, which requires only a desire to promote the wrongful venture's success," that also can be alleged "by showing 'a continuous business relationship' between the participant and the trafficker." *Id.* (internal citations omitted) (court may infer from such

8

continuous business relationship that participant and trafficker have "tacit agreement" sufficient for "participation" under § 1595); s*ee also H.H. v. G6 Hosp., LLC*, No. 19-cv-755, 2019 WL 6682152, at *4 (S.D. Ohio Dec. 6, 2019) ("In the absence of a direct association, Plaintiff must allege at least a showing of a continuous business relationship between the trafficker and the hotels such that it would appear that the trafficker and the hotels have established a pattern of conduct or could be said to have a tacit agreement."). As discussed, Mitchell has alleged that Choice Hotels has an ongoing franchise relationship with the owner of Rodeway, which gives rise to a reasonable inference when viewing all alleged facts in a light most favorable to Mitchell, as the court must do at the pleading stage, that Choice Hotels facilitated the venture's success by tacitly allowing Rodeway's alleged, ongoing wrongdoing to continue, despite receiving express notice of it.

Finally, Choice Hotels cites to *Red Roof Inns*, for the proposition that "observing something is not the same as participating in it," 21 F.4th at 727, noting the Eleventh Circuit found allegations that "the franchisors sent inspectors to the hotels who *would have* seen signs of sex trafficking" and "received reviews mentioning sex work occurring at the hotels" were insufficient to establish the *franchisors' participation* in that plaintiff's sex trafficking. Again, contrary to Choice Hotels' contention, Mitchell is not merely alleging that Choice Hotels should have been on the lookout for or taken general steps to prevent sex trafficking in its franchisee hotels. Instead, she alleges that Choice Hotels was told on more than one occasion that the owner of one of its franchises was engaging in a *specific pattern* of trafficking that exploited vulnerable guests. Although it may ultimately turn out that there is little more than the franchise relationship itself to connect Choice Hotels to

9

Mitchell's specific experience with the owner of the Rodeway Inn, her allegations are enough to allow this case to proceed to discovery.

### D. Knowing Benefit

The fourth and final question is whether Choice Hotels was aware it was benefitting in some way from its participation in the venture. *G.G.*, 76 F.4th at 564 ("[T]the benefit need not take the form of 'profits' that are 'the specific result' of a sex-trafficking venture."). Relying on a Ninth Circuit case -- *Does 1-6 v. Reddit, Inc.*, 51 F.4th 1137, 1145 (9th Cir. 2022) -- and two cases from the Southern District of New York -- *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 168-70 (S.D.N.Y. 2019) and *Noble v. Weinstein*, 335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018) -- Choice Hotels argues that the knowing benefit element requires a "causal relationship" between the benefit and the facilitation of the underlying trafficking, as well as knowledge of that causal relationship. However, the Seventh Circuit expressly rejected this argument in *G.G.*, holding that § 1565 "says nothing about why the sex-trafficker provides any benefit to the participant-defendant" or "even require[s] that the sex trafficker itself or himself provide any benefit." 76 F.4th at 564-65. Indeed, the court found that this causation "gloss on 'knowingly benefits' has been rejected by virtually every other court." *Id*. at 565 n.20 (collecting cases).

Therefore, even though Choice Hotels did not knowingly reap profits from the rental of the room in which Mitchell was allegedly assaulted, her allegations permit a reasonable inference, however tentative and weak, that Choice Hotels was aware it was benefitting financially -- such as through a percentage of gross room revenue -- from its franchise agreement with Rodeway. *See id*. (Salesforce's awareness that it was benefiting

10

from contracts with perpetrator is enough to satisfy this element.).  Accordingly, Mitchell has plausibly alleged a claim under § 1565.

**II. Intentional Infliction of Emotional Distress**

To state a claim for intentional infliction of emotional distress under Wisconsin law, Mitchell must allege that Choice Hotels' conduct (1) was intended to cause emotional distress, (2) was extreme and outrageous, (3) was a cause-in-fact of Mitchell's emotional distress, and (4) resulted in Mitchell suffering an extreme, disabling emotional response. *Hutter v. Huneke*, No. 16-cv-717, 2018 WL 3611961, at *2 (W.D. Wis. July 27, 2018); *Rabideau v. City of Racine*, 2001 WI 57, ¶ 33, 243 Wis. 2d 486, 501, 627 N.W.2d 795, 803 (2001).  Choice Hotels argues that Mitchell has failed to allege any affirmative action specifically taken by Choice Hotels that is so outrageous as to plausibly result in a disabling emotional response.

When viewed in a light most favorable to Mitchell, however, the allegations -- Choice Hotels assisted or facilitated Rodeway Inn's conduct of subjecting guests to sexual assault in exchange for maintaining their housing that lead to Mitchell's alleged assault and resulting PTSD -- are sufficient at this early stage to state a claim for intentional infliction of emotional distress.  Similarly, Choice Hotels' additional argument that Mitchell inappropriately attempts to attribute its franchisee's tortious acts -- which may be found to include either Rodeway Inn or Extended Stay America -- also involve factual questions best resolved on summary judgment or at trial.

ORDER

IT IS ORDERED that:

(1) Defendant Choice Hotels International, Inc.'s motion to dismiss (dkt. #13) is DENIED; and

(2) The clerk's office shall set a preliminary pretrial conference before the magistrate judge to set the schedule for this case.

Entered this 11th day of July, 2024.

BY THE COURT:

/s/
_____
WILLIAM M. CONLEY
District Judge